**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JEROME FRENCH** | **CIVIL ACTION** |
| **VERSUS** | **NO.   10-1890** |
| **N. BURL CAIN, WARDEN** | **SECTION "A"(4)** |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.**     **Procedural History of the Captioned Case**

On March 23, 2011, the undersigned Magistrate Judge issued a Report and Recommendation addressing the federal habeas corpus petition filed by Jerome French ("French").[2]  In that report, the Court addressed the  State's limitations defense and recommended that the petition be dismissed with prejudice as time-barred.

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 10.

After considering French's objections, the District Judge issued an Order and Reasons granting French equitable tolling thereby finding his federal petition to have been timely filed.[3]  The District Judge also referred the matter back to the undersigned to address the merits of French's claims.  This supplemental report is in response to the District Court's referral.

## II.    __Factual Background__

French is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[4]  On July 18, 2003, French was charged by bill of information in Orleans Parish with the aggravated battery with a dangerous weapon of Nelkita Jones.[5]

The record reflects that, on January 22, 2003, Jones was given a ride to a male friend's house by her friend Shelita Grandpre.[6]  Grandpre indicated that she was going to pick up her boyfriend, identified as French, and would return later to pick up Jones.  When Grandpre returned, French and another man, later identified as Carl Portis, were in the car with her.  Jones's male friend spoke with her about getting in the car with the two men, suggesting that Jones was going to go out with someone else.  After Jones reassured her male friend that Portis was simply French's friend, she got into Grandpre's car.

French overheard the conversation between Jones and her male friend, and he felt that the man had been talking badly about him.  He began to verbally harass Jones.  According to Jones, French was drunk, and she knew that he had a tendency to get into fights when he was intoxicated.

---

[3]Rec. Doc. No. 12.

[4]Rec. Doc. No. 1.

[5]St. Rec. Vol. 1 of 7, Bill of Information, 7/18/03.

[6]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal after direct appeal.  *State v. French*, 896 So.2d 371 (La. App. 4th Cir. 2005) (Table); St. Rec. Vol. 3 of 7, 4th Cir. Opinion, 2004-KA-1821, pp. 2-4, 2/28/05.

After Grandpre dropped-off Portis, French was seated in the front passenger seat. He suddenly forced the car to stop by moving the gear shift into park and grabbing the keys out of the ignition. French then got out of the car, opened the back door, and tried to pull Jones out by grabbing her hair. Jones resisted by holding onto the headrest, and French struck her with a beer bottle that he had in his hand. The blow cut Jones's face.

At that point, Jones tried to exit the rear passenger door but was unable to do so. She begged Grandpre to drive off, because French had cut her. French struck Jones a second time with the bottle, causing cuts on the other side of her face. At first, Grandpre could not find the keys. As she did, French then walked away from the scene. Grandpre drove Jones to the hospital after stopping to pick up another of Jones's friend.

The police were called from the hospital. However, the responding officer stated he could not take a report, because he was not from the district where the incident occurred. Another officer, Detective Herman Franklin, later went to Jones's house and took a full report. Jones provided him with French's name. Detective Franklin compiled a photographic line-up, which he showed to Jones. She identified French's picture from the line-up. A crime laboratory photographer took pictures of Jones's injuries and bloody clothing.

On December 13, 2003, French was tried before a jury, and he was found guilty of the lesser offense of second degree battery.[7] The Trial Court sentenced French on April 16, 2004, to serve five years at hard labor.[8]

---

[7]St. Rec. Vol. 1 of 7, Trial Minutes, 12/17/03; Verdict of the Jury, 12/17/03; St. Rec. Vol. 3 of 7, Trial Transcript, 12/17/03.

[8]St. Rec. Vol. 1 of 7, Sentencing Minutes, 4/16/04; St. Rec. Vol. 3 of 7, Sentencing Transcript, 4/16/04.

The State thereafter filed a multiple offender bill charging French as a third offender.[9]  On December 13, 2004, the Trial Court denied French's motion to quash the multiple bill.[10]  That same day, the Trial Court adjudicated French as a multiple offender, and re-sentenced him to serve 10 years at hard labor.[11]  The Trial Court also denied French's motion to reconsider the sentence.[12]  The State, thereafter, filed its own motion for the court to reconsider the sentence arguing that French should have been sentenced to life as a third offender.[13]

In the meantime, French's appointed counsel appealed the underlying conviction to the Louisiana Fourth Circuit Court of Appeal arguing that the evidence was not sufficient to support the verdict, because of an insufficient showing of serious injury.[14]  On February 23, 2005, the Louisiana Fourth Circuit affirmed the conviction and the original five-year sentence, finding no merit to his claim.[15]  The Louisiana Supreme Court also denied French's related writ application without stated reasons on June 17, 2005.[16]

---

[9]St. Rec. Vol. 1 of 7, Multiple Bill, 4/30/04.

[10]St. Rec. Vol. 1 of 7, Motion to Quash Multiple Offender Bill of Information (undated); Trial Court Order, 12/13/04.

[11]St. Rec. Vol. 1 of 7, Multiple Bill Hearing Minutes, 12/13/04; St. Rec. Vol. 5 of 7, Multiple Bill Hearing Transcript, 12/13/04.

[12]St. Rec. Vol. 1 of 7, Motion to Reconsider Sentence (undated); Trial Court Order, 12/13/04.

[13]St. Rec. Vol. 1 of 7, Motion to Reconsider/Correct Sentence (undated).

[14]St. Rec. Vol. 3 of 7, Appeal Brief, 2004-KA-1821, 11/10/04.

[15]*State v. French*, 896 So.2d at 371; St. Rec. Vol. 3 of 7, 4th Cir. Opinion, 2004-KA-1821, 2/28/05.

[16]*State v. French*, 904 So.2d 682 (La. 2005); St. Rec. Vol. 4 of 7, La. S. Ct. Order, 2005-K-0799, 6/17/05; La. S. Ct. Writ Application, 05-K-799, 3/28/05 (postmarked 3/25/05); St. Rec. Vol. 3 of 7, La. S. Ct. Letter, 2005-K-799, 3/28/05 (showing postmark 3/25/05).

While that writ was pending, at a hearing held April 15, 2005, the Trial Court considered the State's motion to reconsider the multiple offender sentence.[17]  The Court re-sentenced French that same day as a third offender to serve life in prison without parole, probation, or suspension of sentence.

French's counsel appealed the sentence to the Louisiana Fourth Circuit arguing that the life sentence was not proper in this case and that he was denied the right to a jury on the issue of his enhancement.[18]  On November 15, 2006, the Louisiana Fourth Circuit affirmed the multiple offender adjudication and sentence finding the claims to be without merit.[19]

While the appeal was pending, on March 6, 2006, French submitted an application for post-conviction relief to the state trial court in which he alleged he was denied an appeal from his multiple offender adjudication.[20]  The Trial Court dismissed the application on October 30, 2006 in light of the then-pending appeal.[21]

Later, on September 14, 2007, the Louisiana Supreme Court denied without stated reasons French's writ application seeking review of his multiple offender appeal.[22]  French's application for

---

[17]St. Rec. Vol. 1 of 7, Sentencing Minutes, 4/15/05; Sentencing Transcript, 4/16/04.

[18]St. Rec. Vol. 5 of 7, Appeal Brief, 2006-KA-0525, 6/5/06.

[19]*State v. French*, 943 So.2d 1279 (La. App. 4th Cir. 2006) (Table); St. Rec. Vol. 5 of 7, 4th Cir. Opinion, 2006-KA-0525, 11/15/06.

[20]St. Rec. Vol. 1 of 7, Uniform Application for Post-Conviction Relief, 3/23/06 (dated 3/6/06).

[21]St. Rec. Vol. 1 of 7, Trial Court Judgment, 10/30/06; Minute Entry, 10/31/06.

[22]*State v. French*, 963 So.2d 994 (La. 2007); St. Rec. Vol. 6 of 7, La. S. Ct. Order, 2006-K-2974, 9/14/07; La. S. Ct. Writ Application, 06-K-2974, 12/18/06 (postmarked 12/15/06); St. Rec. Vol. 5 of 7, La. S. Ct. Letter, 2006-K-2974, 12/18/06 (showing postmark 12/15/06).

5

writ of certiorari at the United States Supreme Court was denied on February 19, 2008.[23]   His

conviction became final that same day.[24]   *Geisberg v. Cockrell*, 288 F.3d 268, 271 (5th Cir. 2002)

(for purposes of the AEDPA, a state conviction becomes final when a petition for certiorari is denied

by the United States Supreme Court), *cert. denied*, 537 U.S. 1072 (2002); *Crutcher v. Cockrell*, 301

F.3d 656 (5th Cir. 2002); *State v. Hofman*, 768 So.2d 592, 592 (La. 2000) (conviction not final until

application for writ of certiorari to U.S. Supreme Court is denied), *cert. denied*, 531 U.S. 946 (2000);

*see also*, *Burton v. Stewart*, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction

and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and

sentence 'became final by the conclusion of direct review or the expiration of the time for seeking

such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

## III.   <u>State Procedural History</u>

French mailed his second application for post-conviction relief to the state trial court on May

21, 2008, raising the following ground for relief:[25] (1) he was denied due process where he was tried

and convicted while incompetent; (2) ineffective assistance of counsel for failure to raise an

intoxication or insanity defense; (3) ineffective assistance of trial and appellate counsel for failure

to allege that the verdict should have been only simple battery; and (4) ineffective assistance of

---

[23]*French v. Louisiana*, 552 U.S. 1218 (2008).

[24]The State's finality calculation is in error for failure to consider the filing of the United States Supreme Court
writ application.

[25]St. Rec. Vol. 7 of 7, Uniform Application for Post-Conviction Relief (undated).  French submitted this copy
with his writ application to the Louisiana Supreme Court.  St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 09-KH-1755,
7/29/09; *see also*, 4th Cir. Writ Application, 2009-K-0729, p. 1, 6/3/09.

sentencing and appellate counsel for failure to argue against prejudicial delay in the sentencing. The Trial Court denied the application on June 13, 2008.[26]

Almost one year later, on May 26, 2009, French submitted an application for writ of mandamus to the Louisiana Fourth Circuit  seeking to have the Trial Court rule on his post-conviction application and his request to supplement.[27]  The Louisiana Fourth Circuit denied his request for mandamus on June 23, 2009, because the Trial Court had ruled on his application on June 13, 2008, and he was not entitled to the mandamus relief sought.[28]

On July 20, 2009, French submitted a writ application to the Louisiana Supreme Court in which he sought review of his four post-conviction claims raised in the trial court and arguing that the Louisiana Fourth Circuit erred in denying his application for writ of mandamus.[29]  On May 28, 2010, the Louisiana Supreme Court denied French's subsequent writ application without stated reasons.[30]

## IV.   Federal Petition

On July 6, 2010, the clerk of this Court filed French's petition for federal habeas corpus relief, in which he raised five grounds for relief:[31] (1) he was denied due process where he was tried and convicted while incompetent; (2) ineffective assistance of counsel for failure to raise an

_____

[26]St. Rec. Vol. 1 of 7, Minute Entry, 6/13/08; Docket Master Entry, 6/13/08; *see also*, St. Rec. Vol. 7 of 7, 4th Cir. Order, 2009-K-0729, 6/23/09.

[27]St. Rec. Vol. 7 of 7, 4th Cir. Writ Application, 2009-K-0729, 6/3/09 (dated 5/25/09); Mail Receipt, 5/26/09; *see also*, Motion to Supplement (undated); Mail Receipt, 2/21/09.

[28]St. Rec. Vol. 1 of 4, 4th Cir. Order, 2009-K-0729, 6/23/09.

[29]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 09-KH-1755, 7/29/09 (postmark 7/20/09, dated 7/20/09).

[30]*State ex rel. French v. State*, 36 So.3d 241 (La. 2010); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2009-KH-1755, 5/28/10.

[31]Rec. Doc. No. 1.

intoxication or insanity defense; (3) ineffective assistance of trial and appellate counsel for failure

to allege that the verdict should have been only simple battery; (4) ineffective assistance of

sentencing and appellate counsel for failure to argue against prejudicial delay in the sentencing; and

(5) the Louisiana Fourth Circuit erred by not granting him a writ of mandamus ordering the state

trial court to rule on his post-conviction application, and by failing to order the trial court to provide

him a copy of the judgment.

The State filed a response in opposition to French's petition alleging that the petition was

not timely filed.[32]  That defense was addressed in the Court's first Report and Recommendation and

rejected by the District Judge.  The Court does not require further briefing from the State to address

the merits of the claims raised.

## V.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-

132, 110 Stat. 1214,[33] applies to this petition, which is deemed filed in this Court under the federal

mailbox rule on June 23, 2010.[34]  The threshold questions in habeas review under the amended

statute are whether the petition is timely and whether the claim raised by the petitioner was

---

[32]Rec. Doc. No. 8.

[33]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[34]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed French's petition on July 6, 2010, when pauper status was granted.  French's signature on the petition is dated June 23, 2010.  This is considered to be the earliest date on which he could have  submitted the pleadings to prison officials for mailing.

adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)). The District Judge has rejected the State's limitations defense. The record reflects that the claims have been exhausted and none are in procedural default.

## VI.   <u>Standards of Review of the Merits</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See, e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641

(quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).
In addition, review under § 2254(d)(1) is limited to the record that was before the state court that
adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

**VII.**   **Analysis**

    **A.**   **Denial of Due Process Based on Incompetence (Claim No. 1)**

        French alleges that he was denied due process, because he was tried and convicted while he
was incompetent.  He complains that, although the Trial Court received a psychiatric report, it was
not provided copies of his prior mental health records.  He also alleges that the Trial Court, in some
unspecified way, did not follow statutory procedures for determining his competency.

        French raised this issue in his application for post-conviction relief, which was denied by the
state courts' without stated reasons.

        It is a violation of due process to try and convict a defendant who lacks mental competence.
*Cooper v. Oklahoma*, 517 U.S. 348 (1996); *Pate v. Robinson*, 383 U.S. 375 (1966); *Carter v.
Johnson*, 131 F.3d 452 (5th Cir. 1997).  The constitutional standard for competency is whether a
defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of
rational understanding" and "a rational as well as factual understanding of the proceedings against
him." *Dusky v. United States*, 362 U.S. 402 (1960).  A defendant is denied a fair trial where the
evidence and circumstances should raise a reasonable doubt about his competence and the court fails
to make further inquiry.  *See Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir. 1980).

        There is no case law generated by either the Supreme Court or the United States Fifth Circuit
which would require a federal habeas court to conduct a de novo review of the state court's
determination of competency to proceed. *See Moody v. Johnson*, 139 F.3d at 481 (citing *Carter v.*

*Johnson*, 131 F.3d 452, 460 (5th Cir. 1997) (habeas petitioner is entitled to federal evidentiary hearing only by offering clear and convincing evidence of a threshold doubt of competency)). Furthermore, the question of competency to stand trial is a question of fact.  *Patterson v. Cockrell*, 69 Fed. Appx. 658, 2003 WL 21355999 at *4 (5th Cir. 2003) (citing *Maggio v. Fulford*, 462 U.S. 111, 117 (1983)).   Thus, under the AEDPA, the Trial Court's determinations of French's competency is presumed correct.  This Court must give deference to the state court findings, unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  French has not met his burden under § 2254(e)(1) of establishing that the Trial Court's findings were unreasonable for the following reasons.

The record is clear that the Trial Court held a competency hearing on September 25, 2003, at which the Court received the testimony of Dr. R. Richoux, an expert in forensic psychology/psychiatry.[35]  French has not provided the Court with a copy of the transcript from that hearing and it is not in the state court trial or appellate records.

The hearing minutes indicate that the State and defense counsel stipulated that if Dr. R. Salcedo had been called to testify he would have testified the same as Dr. Richoux.  A copy of the reports from both Dr. Richoux and Dr. Salcedo, dated September 25, 2003, are in the record.[36]

In his summation of French's medical history, Dr. Salcedo indicates that French had been previously treated for substance abuse and not a psychiatric diagnosis.  French had not received

---

[35]St. Rec. Vol. 1 of 7, Competency Hearing Minutes, 9/25/03.

[36]St. Rec. Vol. 1 of 7, Dr. R. Richoux's Report (2 of 3 pages), 9/25/03; St. Rec. Vol. 2 of 7, Competency Evaluation Report (Dr. Salcedo), 9/25/03.

psychiatric treatment since 1995.  He also acknowledged that French advised him that, as a young

child, French was given a behavior disorder classification and placed in special education classes.

Based on each of their examinations, Dr. Richoux and Dr. Salcedo both concluded that

French met the *Bennett* criteria for competency to proceed to trial.  This appears to be a reference

to the Louisiana Supreme Court case of *State v. Bennett*, 345 So.2d 1129 (La. 1977), in which that

court held:

> The decision as to a defendant's competency to stand trial should not turn solely
> upon whether he suffers from a mental disease or defect, but must be made with
> specific reference to the nature of the charge, the complexity of the case and the
> gravity of the decisions with which he is faced.  Appropriate considerations in
> determining whether the accused is fully aware of the nature of the proceedings
> include: whether he understands the nature of the charge and can appreciate its
> seriousness; whether he understands what defenses are available; whether he can
> distinguish a guilty plea from a not guilty plea and understand the consequences of
> each; whether he has an awareness of his legal rights; and whether he understands
> the range of possible verdicts and the consequences of conviction.  Facts to consider
> in determining an accused's ability to assist in his defense include: whether he is able
> to recall and relate facts pertaining to his actions and whereabouts at certain times;
> whether he is able to assist counsel in locating and examining relevant witnesses;
> whether he is able to maintain a consistent defense; whether he is able to listen to the
> testimony of witnesses and inform his lawyer of any distortions or misstatements;
> whether he has the ability to make simple decisions in response to well-explained
> alternatives; whether, if necessary to defense strategy, he is capable of testifying in
> his own defense; and to what extent, if any, his mental condition is apt to deteriorate
> under the stress of trial.

*Id*., at 1138 (citations omitted).

In keeping with this, both doctors determined that French understood the nature of the

charges against him and details of the criminal process and proceedings.  Each doctor also found that

French demonstrated an ability to assist in his defense and to provide a detailed version of his

account of the crime.  Both of the doctors also resolved that French had "an essentially normal

mental status examination."[37]  Based on the record and these reports presented at the competency hearing, the Trial Court's determination that French was competent was not an unreasonable determination of the facts based on the resolutions offered by the psychiatrists.

Furthermore, this is consistent with well-settled federal law on competence to proceed.  A defendant is mentally competent when he has the "present ability to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceeding . . . against him."  *Dusky v. United States*, 362 U.S. 402 (1960); *Dunn v. Johnson*, 162 F.3d 302, 305 (5th Cir. 1998).  These standards are consistent with the *Bennett* standards applied by Dr. Salcedo.

The Supreme Court also held in *Medina v. California*, 505 U.S. 437 (1992) that a State may presume in its laws that the defendant is competent to proceed and require the defendant to bear the burden of proving his incompetence by a preponderance of the evidence.  *Id.* at 449; *Meredith v. Cain*, 2005 WL 1400453 at *7 (E.D. La. 2005).  Louisiana's law does just this; it presumes that a defendant is competent and the defendant bears the burden of proving his incapacity to stand trial. *State v. Hernandez*, No. 98-KA-448, 1999 WL 314707, at *3 (La. App. 5th Cir. May 19, 1999); *State v. Lott*, 671 So. 2d 1182, 1186 (La. App. 2d Cir. 1996).

At the hearing held before the Trial Court, French did not overcome the presumption of competence.  Dr. Salcedo, whose report was consistent with Dr. Richoux's testimony, resolved that French understood the charges, he understood the gravity of the proceedings, and he was capable of understanding and assisting his counsel with a defense.  These factors are what are required for the Trial Court to have determined that he was competent.

---

[37]St. Rec. Vol. 1 of 7, Dr. R. Richoux's Report, p. 3, 9/25/03; St. Rec. Vol. 2 of 7, Competency Evaluation Report (Dr. Salcedo), p. 3, 9/25/03.

The Court's factual finding was not based on an unreasonable determination of the facts in light of the un-refuted testimony of the psychiatrist reports relied upon at the competency hearing. The state courts' denial of relief also was not contrary to or an unreasonable application of Supreme Court law.  For the foregoing reasons, French is not entitled to habeas corpus relief on this claim.

**B.** **Ineffective Assistance of Counsel (Claim Nos. 2, 3, 4)**

French has alleged several grounds on which he claims his counsel provided ineffective assistance during his multiple offender proceedings.  He alleges that his trial counsel was deficient for failing to raise a defense of insanity and/or intoxication at the time of the crime.  He also claims that his trial and appellate counsel failed to argue that the verdict should have been the lesser offense of simple battery.  French also claims that his trial counsel erred in not filing a motion to quash the multiple bill, and that his trial and appellate counsel also failed to adequately argue that the delay in his sentencing was prejudicial.  These claims were denied on post-conviction review by the state courts' without stated reasons.

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009).  Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The appropriate standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  The petitioner has the burden of proving ineffective assistance of counsel by a

preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Cantu v. Thaler*, 632 F.3d 157, 163 (5th Cir. 2011). The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689).

In order to prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566

F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "'a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694. This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S. Ct. at 791.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

(citations and quotation marks omitted) *Harrington*, 131 S. Ct. at 788.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. __, 129 S. Ct. 1411, 1413 (2009)).

The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689 and quoting *Knowles*, 129 S. Ct. at 1419 n.2).

### 1.   Trial Counsel Failed to Raise an Intoxication Defense

To the extent French alleges that his counsel should have raised an insanity defense, he has offered nothing to support the suggestion that he was insane. Instead, his arguments point to his drunkenness at the time of the attack on Jones. Under a broad reading, French argues that the victim noted that he had been drinking and that he had a tendency to be violent when he drank.

At the outset, intoxication was not a proper defense to French's charge. French faced the charge of aggravated battery, which is a general intent crime under Louisiana law. *State v. Lewis*, 61 So.3d 78, 84 (La. App. 5th Cir. 2011); *State v. Steward*, 969 So.2d 804, 808 (La. App. 2d Cir. 2007) (citing La. Rev. Stat. Ann. § 14:10(2)). Under Louisiana law, voluntary intoxication is a defense only to specific criminal intent. La. Rev. Stat. Ann. § 14:15; *State v. Yanes*, 40 So.3d 245, 251 (La. App. 5th Cir. 2010). Intoxication, therefore, is not an available defense to a general intent crime like aggravated battery. *State v. Garner*, 890 So.2d 733 736 (La. App. 2d Cir. 2004) (citing *State v. Boleyn*, 328 So.2d 95 (La. 1976)); *see State v. Yanes*, 40 So.3d at 251; *accord Mills v. Jones*, 62 F.3d 396 (5th Cir. 1995) (citing *State v. Sheppard*, 646 So.2d 1130, 1133 (La. App. 5th Cir. 1994). Counsel, therefore, had no legal basis to raise an intoxication defense to the aggravated battery charge. Counsel would not have been deficient in his performance for failing to address or pursue a meritless defense. *Green v. Johnson*, 160 F.3d at 1037.

Furthermore, counsel's strategic approach and choice of defense was to convince the jury that this was no more than a simple battery, a defense French still urges in this petition. Counsel's

strategic choices can not be second guessed only because a guilty verdict was reached.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  *Strickland*, 466 U.S. at 689 (citations omitted).  Counsel focused his questioning on establishing that French did not have a beer or alcohol bottle in the car with which to have hit Jones.  This line of questioning was to support the defense that the crime was at best a simple battery, another general intent crime to which intoxication would not have been a defense.

The jury, however, in its prerogative, found French guilty of another lesser offense, second degree battery.  Under Louisiana law, second degree battery is a specific intent crime.  *State v. Fuller*, 414 So.2d 306, 309-10 (La. 1982); *State v. Fortino*, 837 So.2d 684, 690 (La. App. 5th Cir. 2002).  French's intoxication may have been relevant to a defense to that crime.  However, the record is clear that the jury had before it some evidence regarding whether he was intoxicated at the time of the attack.  The record reflects that Jones herself testified that French appeared to have been drinking and was acting harshly because of it.[38]  The defense witness, Carl Portis, also testified that he and French had been drinking hard liquor before they got into Grandpre's car.[39]

The jury's understanding of the evidence, or their decision to believe or disregard certain evidence, was well within their powers.  French does not suggest that there was any other physical evidence of his alleged intoxication that could have been presented by counsel.  The jury's assessment of the evidence can not be challenged on habeas review simply by couching it as an ineffective assistance of counsel claim.  In light of the evidence that was before the jury, which the

---

[38]St. Rec. Vol. 3 of 7, Trial Transcript, pp. 32, 39, 12/17/03.

[39]*Id*., pp. 46, 49.

19

jury apparently chose to reject, French has not established any prejudice from counsel's failure to argue the intoxication evidence, especially in light of the chosen defense strategy.

For these reasons, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, *Strickland*.  French is not entitled to relief on this claim.

## 2.    Trial and Appellate Counsel Failed to Argue for Verdict of Simple Battery

French argues that his trial counsel failed to argue that the verdict should have been simple battery instead of aggravated battery.  He also complains that his appellate counsel did not adequately argue for the lesser verdict on appeal.

In essence, French claims that both his trial counsel and his appellate counsel did not adequately argue the insufficiency of the evidence to support the verdict, which he believes should only have been simple battery.  French's claim is contrary to the record.  During voir dire, opening statements, and closing arguments, French's trial counsel specifically and repeatedly argued to the jury that this was a crime of nothing more than simple battery.  Counsel targeted the questioning in an attempt to show that there was no proof that French used a bottle or any object to strike Jones. He presented the testimony of Carl Portis to establish that it was Jones who taunted French in the car.  In other words, counsel's entire presentation centered around convincing the jury that the evidence only established a simple battery.  The fact that his strategy was not successful does not render his performance unconstitutional.  *Strickland*, 466 U.S. at 689; *Martinez v. Dretke*, 99 Fed. Appx. 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").  French has not established that counsel's trial tactics were deficient or other than reasonable performance in light of the facts of the case.

As for appellate counsel, the first appeal was in fact based on the insufficiency of the evidence. The Supreme Court has long-recognized that appellate counsel filing a merits brief need not and should not raise every nonfrivolous claim; instead counsel may select from among them in order to maximize the likelihood of success on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *Kossie v. Thaler*, No. 09-20581, 2011 WL 1659395, at *3 (5th Cir. Apr. 28, 2011). In this case, French's appellate counsel argued the insufficient evidence claim in the first direct appeal challenging the conviction on the grounds that the evidence did not establish that Jones suffered a serious bodily injury in the attack. This is the same argument now asserted by French, that Jones did not suffer the type of injury that would make this a second degree battery situation.

French has failed to establish that appellate counsel failed to present a non-frivolous claim on direct appeal, or that he suffered any prejudice where counsel presented the same claim French now suggests should have been raised. The Louisiana appellate court found no merit in the claim that the evidence was insufficient to establish the requisite injury to support the second degree battery conviction. French has presented nothing to suggest that his restatement of that same claim would have fared better before the state courts. Counsel's performance is not deficient for failing to raise a meritless claim. *See Anderson v. Quarterman*, 204 Fed. Appx. 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal . . . lack merit. As such, failure to raise these issues did not prejudice Anderson."); *see also*, *Kossie v. Thaler*, 2011 WL 1659395, at *3 (recognizing the Supreme Court's premise that only when ignored claims are stronger than those raised will the presumption of effectiveness be overcome) (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). French is not entitled to relief on this claim.

For these reasons, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, *Strickland*.

### 3.   Sentencing and Appellate Counsel Failed to Argue Prejudicial Delay

French alleges that his counsel at the multiple bill sentencing and on appeal therefrom was ineffective for failing to challenge the undue delay in his multiple bill sentencing. He argues that, because of the delay, the State was able to use his prior convictions as two separate convictions instead of one, which allowed him to be sentenced as a third offender and while incompetent. He concedes that his counsel unsuccessfully raised an ex post facto and other arguments on direct appeal. He, however, argues that counsel should have approached the issue from an undue delay on the basis that too much time passed between filing of the multiple bill and the sentencing itself.

As a preliminary matter, there is no precedent from the United States Supreme Court specifically holding that the Constitution guarantees a right to speedy sentencing. Other courts addressing this issue have likewise been unable to identify such a holding by the Supreme Court. *See Lewis v. Ducharme*, 9 Fed. Appx. 12 (9th Cir. 2001) (Habeas corpus relief denied to applicant who alleged violations of the Sixth and Fourteenth Amendments with respect to a delayed sentencing claim because no Supreme Court cases squarely hold that the Sixth Amendment's right to a speedy trial or the Fourteenth Amendment's due process clause apply to delayed sentencing or appeals.); *Hicks v. Wilkinson*, __ F. Supp.2d __, 2011 WL 864844, slip op. at *8 (W.D. La. Mar. 10, 2011); *Muhammad v. Hubert*, No. 06-1420, 2007 WL 3104331, at *13 (E.D. La. Oct. 22, 2007) (Report and Recommendation adopted). For this reason alone, he has failed to demonstrate a legal basis for his counsel to have argued undue delay or that the delay violated the Constitution. *Green v. Johnson*, 160 F.3d at 1037. Furthermore, because French cannot establish that the delay in

sentencing violated ". . . clearly established Federal law, as determined by the Supreme Court of the United States . . .",  he also cannot demonstrate that the state courts' denial of relief on his ineffective assistance of counsel claim was an unreasonable application of or contrary to such authority.

Even if the Court were to assume for argument sake that the Sixth Amendment right to a speedy trial applies to sentencing, French has failed to demonstrate any prejudice arising from the sentencing delays in his case.  In *Pollard v. United States*, 352 U.S. 354 (1957), the Supreme Court stated in dicta that "[w]e will assume arguendo that sentence is part of the trial for purposes of the Sixth Amendment," and resolved that "[w]hether delay in completing a prosecution such as here occurred amounts to an unconstitutional deprivation of rights depends upon the circumstances [and] [t]he delay must not be purposeful or oppressive." *Id*., at 486.  Although this was dicta and not precedential for purposes of the AEDPA, French has not shown that he suffered any prejudice as a result of the delay in his case.

The Court first notes that, under a broad reading, French suggests that he was sentenced while he was incompetent and actually innocent of second degree battery.  French has not offered any suggestion of his innocence other than to have this Court, and the state courts improperly reassess the evidence and verdict resolved by the jury.  Similarly, he has not demonstrated that he was ever found to be incompetent or that he should have been under the standards of review allowable on habeas review.  He also has failed to demonstrate how either concern was impacted by any delay in his sentencing.  His conjecture on these points is without merit.

French argues here that the delay resulted in the State's ability to sequence his prior convictions in a manner different than that allowed by Louisiana law prior to the Louisiana Supreme

Court's opinion in *State v. Johnson*, 884 So.2d 568 (La. 2004). As the Louisiana Court's held on appeal, the delay in his sentencing did not alter the application of Louisiana's habitual offender laws. Louisiana law provides that the sentencing laws in place at the time of the crime apply, not those in place at the time of the sentencing. *Fisher v. Cain*, No. 06-2858, 2009 WL 799979, at *12 n.14 (E.D. La. Mar. 25, 2009) (Report and Recommendation adopted). At all relevant times, the language of Louisiana's habitual offender statute did not contain a sequencing requirement. La. Rev. Stat. Ann. § 15:529.1. Instead, the Louisiana Supreme Court's decisions in *State ex rel. Mims v. Butler*, 601 So.2d 649, 650 (La.1992), and *State v. Johnson*, 884 So.2d 568 (La. 2004), provided guidance on the intended sequencing of prior convictions.

In both cases, the Louisiana Supreme Court interpreted the effect of a 1982 amendment to the habitual offender statute and the sequencing of prior crimes for enhancement purposes. The Court was clear that it was not changing the law in *Johnson*, but instead reinterpreting that same amendment based on legislative materials and intent not known when *State ex rel. Mims* was issued. In overruling *State ex rel. Mims*, the Louisiana Supreme Court in effect indicated that its holding in *Johnson* was the way the law was meant to be from 1982 forward.

Because the Louisiana Supreme Court in *Johnson* gave the statute a different but reasonable interpretation which was not unexpected and indefensible, there was no ex post facto violation. *See Butler v. Cain*, 327 Fed. Appx. 455, 456-57 (5th Cir. 2009). Without an ex post facto violation, the sentencing delay did not change the law applicable to French's habitual offender determination. The sentencing delay, therefore, was not prejudicial in the manner suggested by French.

French's account of the delays is also in error. The record demonstrates that the State filed the multiple bill on April 30, 2004, two weeks after French was sentenced on the underlying verdict,

and his counsel filed a notice of appeal from the conviction.[40]  That appeal proceeded without delay. The Trial Court accepted his plea of not guilty on the multiple bill and appointed him counsel on June 25, 2004.[41]  French was not brought from the jail for the hearing set July 30, 2004, and a continuance was granted.[42]  The defense moved for a continuance of the next hearing on September 9, 2004.[43]  French was not brought from the jail for the hearings set October 12, 15, and 29, 2004, and continuances were granted.[44]

After he was sentenced on the multiple bill on December 13, 2004, the State filed a motion to correct the sentence.[45]  French appeared at a sentencing hearing without counsel on February 3, 2005, and a continuance was granted.[46]  Shortly thereafter, on February 23, 2005, the Louisiana Fourth Circuit affirmed French's conviction and original sentence.[47]

On March 17, 2005, French appeared with new counsel for sentencing, and a continuance was granted at the defense's request.[48]  French was re-sentenced to serve life in prison on April 15,

---

[40]St. Rec. Vol. 1 of 7, Multiple Bill, 4/30/04; Sentencing Minutes, 4/16/04; Minute Entry, 4/30/04.

[41]St. Rec. Vol. 1 of 7, Minute Entry, 6/25/04.

[42]St. Rec. Vol. 1 of 7, Minute Entry, 7/30/04.

[43]St. Rec. Vol. 1 of 7, Minute Entry, 9/9/04.

[44]St. Rec. Vol. 1 of 7, Minute Entry, 10/15/04; Minute Entry, 10/12/04.

[45]St. Rec. Vol. 1 of 7, Multiple Bill Sentencing Minutes, 12/13/04; Motion to Reconsider/Correct Sentence, 12/16/04.

[46]St. Rec. Vol. 1 of 7, Minute Entry, 2/3/05.

[47]*State v. French*, 896 So.2d at 371; St. Rec. Vol. 3 of 7, 4th Cir. Opinion, 2004-KA-1821, 2/28/05.

[48]St. Rec. Vol. 1 of 7, Minute Entry, 3/17/05.

2005, and was allowed to appeal that sentence.[49]  The multiple bill proceeding and the sentence were affirmed on appeal.[50]

A review of this history indicates that all of the delays were either requested by the defense in preparation or the result of French's failure to appear at the hearings.  French has not demonstrated that the State caused the delay or that the delay was purposeful or oppressive as would be required for a "speedy sentencing" claim, should one exist.

Because of the nature of French's case and the true basis for the delay, there was no reason for his counsel to have argued that the delay in bringing him to sentencing was unconstitutional, even if such a claim had been recognized by the United States Supreme Court.  *Green v. Johnson*, 160 F.3d at 1037.  The same is true with regard to raising such a claim on appeal from the multiple offender proceeding and sentence.

For these reasons, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, *Strickland*.  He is not entitled to relief on this claim.

### C.    Appellate Court Error on Writ of Mandamus (Claim No. 5)

In his final argument, French claims that the Louisiana Fourth Circuit erred under Louisiana law in failing to order the state trial court to provide him with a copy of its written judgment rendered on his application for post-conviction relief.  He also claims that, because no written judgment was issued by the state trial court, the Louisiana Fourth Circuit lacked jurisdiction under Louisiana law to consider the merits of his post-conviction claims when it considered his application

---

[49]St. Rec. Vol. 1of 7, Minute Entry, 4/15/05.

[50]*State v. French*, 943 So.2d 1279 (La. App. 4th Cir. 2006) (Table); St. Rec. Vol. 5 of 7, 4th Cir. Opinion, 2006-KA-0525, 11/15/06.

for writ of mandamus.  This claim was denied on post-conviction review by the state courts' without stated reasons.

The United States Supreme Court has held that the States have no constitutional obligation to provide post-conviction relief.  *Lackawanna County Dist. Atty. v. Coss*, 523 U.S. 394, 402-03 (2001).  As a result, claims concerning alleged errors in state post-conviction proceedings are matters of state law which are not cognizable in federal habeas corpus proceedings.  *Accord Engle v. Isaac*, 456 U.S. 107, 119 (1983); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995); *see also*, *Morris v. Cain*, 186 F.3d 581, 585 n.6 (5th Cir. 1999).  This court's review is limited to matters of constitutional magnitude and violations of federal law, neither of which are raised by French's claim.  *See Swarthout v. Cooke*, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of or in applying state law).  For these reasons, French's complaints about the state court's handling of his post-conviction writ applications are not cognizable here.  He is not entitled to relief on this claim.

## VIII.   Recommendation

It is therefore **RECOMMENDED** that Jerome French's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[51]

New Orleans, Louisiana, this 14th day of July, 2011.

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[51]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.